## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION TO** |
| | ) | **REDUCE SENTENCE** |
| vs. | ) | |
| | ) | Case No. 3:11-cr-00066-01 |
| Paul Isaac Aherns, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are Defendant Paul Isaac Aherns' motions to reduce sentence. On June 9, 2020, Aherns filed a *pro se* motion for compassionate release. Doc. No. 203. The Government responded in opposition to the motion on June 17, 2020. Doc. No. 204. On June 23, 2020, the Court appointed the Office of the Federal Public Defender to represent Aherns in his efforts to obtain compassionate release. Doc. No. 206. Through counsel, Aherns filed a second motion for compassionate release on July 10, 2020. Doc. No. 211. The Government again responded in opposition on July 22, 2020. Doc. No. 213. Aherns filed a reply on July 29, 2020. Doc. No. 214. In his motions, Aherns seeks a reduction in his sentence to time served based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018 ("FSA"). For the reasons below, the motions are granted.

## I.      BACKGROUND

On June 8, 2011, a grand jury returned an indictment against four defendants, including Aherns. Doc. No. 40. The indictment charged Aherns with conspiracy to possess with intent to distribute and distribute in excess of 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Id. On July 11, 2011, the Government filed an information certifying that Aherns had accrued at least two prior

felony drug convictions, resulting in an enhanced minimum mandatory sentence of life imprisonment under the then existing version of 21 U.S.C. § 841(b)(1)(A)(viii).  Doc. No. 64.  Pursuant to a plea agreement, Aherns pleaded guilty on August 8, 2011.  Doc. No. 87.

The presentence investigation report ("PSR") determined Aherns' base offense level to be 34 under USSG § 2D1.1(c)(3).  Doc. No. 117, ¶ 20.  The PSR designated Aherns in criminal history category IV with nine scorable criminal history points.  Id. ¶ 34.  His criminal history principally includes federal convictions from 1999 for conspiracy to distribute marijuana and false declaration before a grand jury, as well as two Minnesota fifth-degree controlled substance convictions for distribution of 2.5 grams of methamphetamine on separate occasions in 2008.  Id. ¶¶ 31-34.  A three-level downward adjustment applied for acceptance of responsibility and timely notification under USSG § 3E1.1, culminating in a total offense level of 31.  Id. ¶¶ 27-28.  The guidelines accordingly called for a sentence of 151-188 months' imprisonment.  Id. ¶ 56.  But because the statutory mandatory minimum exceeded the applicable guideline range, USSG § 5G1.1(b) provided for a guideline sentence of life imprisonment.  Id. ¶ 55.

At sentencing on October 24, 2011, the Court[1] deemed a downward departure warranted and imposed a 216-month sentence with five years of supervised release to follow.  Doc. No. 120.  On February 22, 2016, the Court reduced Aherns' sentence to 173 months' imprisonment under 18 U.S.C. § 3582(c)(2).  Doc. No. 183.  The Court based the reduction on Amendment 782 to the sentencing guidelines, which applied retroactively and lowered the base offense level for most drug offenses by two levels.  Id.

---

[1] The Honorable Ralph R. Erickson, then Chief Judge of the United States District Court for the District of North Dakota, now Circuit Judge of the United States Court of Appeals for the Eighth Circuit.

The Bureau of Prisons ("BOP") placed Aherns at FCI Sandstone in Minnesota. Now 48 years old, Aherns has a projected release date of October 28, 2023. Inmate Locator, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 28, 2020). To date, Aherns has served just over 110 months of his sentence. He has also earned all available good conduct time while incarcerated, providing him with additional credit for an estimated 16.5 months.

As verified by medical records, Aherns suffers from several health issues. See Doc. No. 212. These include a history of hypertension and obesity.[2] Id. at 13, 23. In addition, doctors removed Aherns' right kidney after diagnosing him with renal cell carcinoma in late 2018. Id. at 13, 27-29. No evidence of cancer remained as of February 2020. Id. at 29. Following the nephrectomy, Aherns reports his remaining kidney functions at approximately 50-60% capacity. Doc. No. 203, p. 1. Aherns submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at FCI Sandstone on May 15, 2020. Doc. No. 203-2. On May 19, 2020, the warden denied the request. Doc. No. 203-1.

## II.   DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."[3] 18 U.S.C. § 3582(c)(1)(A). The 18 U.S.C. § 3553(a) factors also must support

---

[2] Aherns' BMI was 37.7 in 2014. Doc. No. 212, p. 23. He reports losing some weight since then but affirms that his BMI remains above 35. Doc. No. 211, p. 8.

[3] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met. See 18 U.S.C. § 3582 (c)(1)(A)(ii). Aherns is 48 years old, so this avenue for relief is foreclosed.

the reduction.  Id.  The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant.  See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### A. Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf.  With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Because 30 days have lapsed since Aherns submitted his request for compassionate release, the Court will proceed to the merits.

### B. Extraordinary and Compelling Reasons

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons."  Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples."  28 U.S.C. § 994(t).  To meet its statutory obligation, the Commission has promulgated USSG § 1B1.13.  The policy statement itself largely mirrors the compassionate release statute's language.  See USSG § 1B1.13(1)-(3).

More pertinent is Application Note 1 to the policy statement.  So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release.  USSG § 1B1.13(2); id. app. n.1.  The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition,

age, or family circumstances, respectively. See id. app. n.1(A)-(C). Subdivision (D)—the catch-all provision—authorizes a sentence reduction when: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than . . . the reasons described in subdivisions (A) through (C)." Id. app. n.1(D).

The Court need look no further than subdivision (A) here. Application Note 1(A)(ii) provides that extraordinary and compelling reasons exist when a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[4] Id. app. n.1(A)(ii). Since the onset of the pandemic, district courts across the country have deemed the self-care provision satisfied where an inmate suffers from chronic health conditions identified by the Centers for Disease Control and Prevention ("CDC") as increasing the risk of serious illness from COVID-19. See, e.g., United States v. Alvarado, Case No. 18-CR-283 (NEB/TNL), 2020 WL 3041504, at *1-2 (D. Minn. May 27, 2020); United States v. Salvagno, 5:02-CR-51 (LEK), 2020 WL 3410601, at *12-13 (N.D.N.Y. Apr. 23, 2020); United States v. Sanchez, No. 18-cr-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020); United States v. Atkinson, Case No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020); United States v. Esparza, Case No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 2020). Internal guidance from the Department of Justice ("DOJ") appears to concur with that assessment. See Wise v. United States, Criminal No. ELH-18-72, 2020 WL 2614816, at *6 n.4 (D. Md. May 22, 2020) (explaining that the DOJ has "taken the position that

---

[4] The policy statement alternatively provides that extraordinary and compelling reasons exist where a defendant is afflicted with "a serious and advanced illness with an end of life trajectory." USSG § 1B1.13 app. n.1(A)(i). None of Aherns' diagnoses is terminal, so this example is inapplicable.

inmates who suffer from a condition identified . . . as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an 'extraordinary and compelling reason' to be considered for compassionate release."); see also United States v. Giron-Canas, Case No.: 20-CR-10022 DMS, 2020 WL 4697965, at *2 (S.D. Cal. Aug. 13, 2020) (referencing DOJ guidance "directing the Government to concede that any defendant who presents any of the CDC's identified high-risk factors during the pandemic can establish 'extraordinary and compelling reasons'"); United States v. Hope, CR 213-016-1, 2020 WL 4207107, at *4 (S.D. Ga. July 22, 2020) (noting that the Government conceded extraordinary and compelling reasons under the self-care provision based on "the Department of Justice's refined position on compassionate release"). Finding this increasingly prevalent interpretation of Application Note 1(A)(ii) persuasive, the Court will proceed to analyze Aherns' compassionate release motions accordingly.

Turning to that task, medical records substantiate Aherns' diagnoses of hypertension and obesity, both included on the CDC's list of risk-increasing conditions. See People Who Are at Increased Risk for Severe Illness, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Aug. 28, 2020). And notably, CDC guidance explains that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." Id. Further, although a solitary kidney is not a standalone risk factor, medical studies indicate that the virus frequently "wreaks havoc on the kidneys" and can result in kidney failure—even for otherwise healthy individuals. United States v. Devino, 4:11CR3096, 2020 WL 4001195, at *1 (D. Neb. July 15, 2020) (citations omitted); see also Coronavirus: Kidney Damage Caused by COVID-19, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/

coronavirus-kidney-damage-caused-by-covid19 (last visited Aug. 28, 2020). Aherns' prior cancer diagnosis and the potential for recurrence also raise concern. With these considerations in mind, Aherns' multiple underlying health conditions place him at heightened risk for serious illness during the pandemic.

In tandem, Aherns' incarceration exacerbates the risk of infection. FCI Sandstone currently reports three active COVID-19 infections. See BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 28, 2020). Once the disease infiltrates a correctional facility, inmates possess diminished ability to protect themselves from exposure. See Doc. No. 211-3, p. 2. To be sure, the Court has repeatedly acknowledged the BOP's extensive efforts to prevent and mitigate outbreaks. See BOP Implementing Modified Operations, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 28, 2020). Nonetheless, the rate of COVID-19 infection among BOP inmates rests today at 9.4%—starkly higher than the nationwide infection rate. Aherns' motions therefore demonstrate that he is suffering from serious medical conditions that substantially diminish his ability to provide self-care during the COVID-19 pandemic within the close-quarter confinement conditions at FCI Sandstone.

As an added component, Aherns' exemplary rehabilitative efforts bolster the case for extraordinary and compelling reasons. See United States v. Brown, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) (explaining that rehabilitation may be considered in conjunction with other factors). Through 110 months in custody, Aherns has earned all available good conduct time, with his last conduct violation occurring in 2012. BOP records reflect that Aherns presents a low risk of recidivism, and he received a minimum security designation in March 2016. He has also undertaken substantial educational and vocational opportunities to prepare for life beyond prison.

See Doc. No. 203-3.  All in all, Aherns presents extraordinary and compelling reasons for a sentence reduction.

### C. Public Safety and Sentencing Factors

Even with extraordinary and compelling reasons established, a sentence reduction still must comport with public safety interests and the 18 U.S.C. § 3553(a) factors.  In accord with the policy statement, the Court must initially determine whether Aherns is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  USSG § 1B1.13(2).  This requires an inquiry into (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by release.  See 18 U.S.C. § 3142(g).

Aherns committed an undoubtedly serious crime.  He trafficked significant quantities of methamphetamine that contributed to the decay of many lives.  But as explained in more detail below, the period of incarceration Aherns has endured to date is sufficiently serious to atone for that offense.  His personal history and characteristics, meanwhile, weigh in favor of release and demonstrate a lack of future dangerousness.  The Court has already discussed the limitations imposed by his medical conditions.  Although Aherns sustained several prior felony drug convictions, his criminal history is entirely nonviolent and evinces—at least in part—a lifelong battle with addiction that fueled his distribution offenses.  Importantly, Aherns appears to enjoy strong support from his mother and extended family.  See Doc. No. 214-1.  The United States Probation Office contacted Aherns' mother and approved her home as a suitable residence for him.  Aherns also holds an offer for stable employment upon release.  Doc. No. 203-4.  In sum, the Court is satisfied that Aherns does not pose a danger to any person or the community.

As a final requirement, the Court must weigh the factors articulated in 18 U.S.C. § 3553(a). The sentencing factors relevant here include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [by the guidelines; and]
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).  The first factor overlaps with the 18 U.S.C. § 3142(g) analysis and tips in favor of release as explained above.

As for the kinds of sentences available and the advisory guideline range, Aherns would face a markedly less harsh sentencing regime if convicted today.  To be clear, the Court does not believe that temporal sentencing disparities create an independent extraordinary and compelling reason for a sentence reduction.  See United States v. Tovar, Case No. 3:12-cr-00031-05, 2020 WL 3578579, at *3-4 (D.N.D. July 1, 2020) (rejecting sentencing disparity as a freestanding basis for extraordinary and compelling reasons); United States v. Condon, Case No. 3:12-cr-00091-10, 2020 WL 2115807, at *5 (D.N.D. May 4, 2020) (same).  Authority to determine the retroactivity of sentencing amendments rests squarely with Congress.  But when extraordinary and compelling

9

reasons otherwise exist, Congress has overtly directed federal courts to consider the § 3553(a) factors anew. See 18 U.S.C. § 3582(c)(1)(A). Doing so here reveals that a time served sentence both falls within the advisory guideline range and exceeds the contemporary mandatory minimum.

To start, the FSA cut down the mandatory minimum penalties imposed by 21 U.S.C. § 841(b)(1)(A). Offenders with two prior felony drug convictions were subject to mandatory life imprisonment under the statute's former version. No longer. Now the mandatory minimum enhancement caps at 25 years and applies only when a defendant accrues prior convictions for a "serious drug felony." 21 U.S.C. § 841(b)(1)(A). The term "serious drug felony" is defined as an offense with a maximum penalty of at least 10 years' imprisonment for which the offender actually served 12 or more months. 21 U.S.C. § 802(57); accord 18 U.S.C. § 924(e)(2)(A)(ii). Under that definition, neither Minnesota fifth-degree controlled substance conviction that the Government certified to enhance Aherns' mandatory minimum qualifies as a serious drug felony. See Doc. No. 64. That means he would face only a 10-year statutory minimum today.

Shifting from the FSA's effect on the statutory penalties, amendments to the sentencing guidelines work in Aherns' favor as well. Following the two-level reduction effectuated by Amendment 782, his total offense level with acceptance of responsibility decreased from 31 to 29. Assuming a static criminal history category IV, that yields an advisory guideline range of 121-151 months' imprisonment.[5] Accounting for earned good conduct time, Aherns has already served north of 126 months. A sentence reduction therefore reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and avoids unwarranted sentencing

---

[5] The Court is also aware that Judge Erickson found Aherns' circumstances warranted additional downward departures at sentencing. See Doc. No. 118.

disparities among similarly situated defendants. Taken as a whole, the § 3553(a) factors support release. The Court will reduce Aherns' sentence to time served as a result.

### D.     Home Confinement

Acknowledging his otherwise applicable October 2023 projected release date, Aherns proposes a period of home confinement equal to the remainder of his sentence as a special condition of supervised release. "Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." USSG § 5F1.2; see also United States v. Campagna, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (granting compassionate release and ordering home detention as condition of supervised release).

The Court concludes that a 12-month period of home confinement in lieu of imprisonment is sufficient but not greater than necessary to closely monitor Aherns in the time immediately following release. Home confinement will both foster Aherns' transition back into society and safeguard his sobriety—the most important factor in ensuring he remains law-abiding upon release. Aherns will be subject to electronic monitoring during this period and must "be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and at such other times as may be specifically authorized" by the United States Probation Office. USSG § 5F1.2, app. n.1. The supervising probation officer should consider Aherns' health conditions and vulnerability to serious illness from COVID-19 before approving absences.

## III.     CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the motions to reduce sentence (Doc. Nos. 203, 211) are **GRANTED**. Accordingly, the Court **ORDERS** Aherns' sentence reduced to time served. Pursuant to 18 U.S.C.

§ 3583(e)(2), the Court further **ORDERS** Aherns' conditions of supervised release modified to commence with a special condition of home confinement with electronic monitoring at his mother's residence for a period of 12 months. The Clerk of Court is directed to enter a corresponding amended judgment. The Court wishes Aherns the best and sincerely hopes he will use this opportunity to live a law-abiding and productive life.

**IT IS SO ORDERED**.

Dated this 28th day of August, 2020.

> */s/ Peter D. Welte*
> Peter D. Welte, Chief Judge
> United States District Court